**E-FILED**
Wednesday, 23 April, 2008  04:14:00 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DR. EILEEN M. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 06-1235 |
| THE METHODIST MEDICAL CENTER ) | |
| OF ILLINOIS, METHODIST COLLEGE ) | |
| OF NURSING, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant The Methodist Medical Center of Illinois, Methodist College of Nursing's Motion for Summary Judgment against Plaintiff Dr. Eileen M. Jackson pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, the Motion for Summary Judgment [#38] is GRANTED.

### JURISDICTION

The Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the claims asserted in the Complaint arise under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973 (Rehab Act).

### BACKGROUND

The Methodist Medical Center of Illinois, Methodist College of Nursing (Methodist College) hired Dr. Eileen Jackson in August 2004 as a professor.  As a condition of

employment, Methodist College required Jackson to complete a pre-employment physical.  During that physical, Jackson completed and signed a health history in which she stated that she never had received psychiatric treatment and did not have any physical, mental, or emotional condition that she believed could affect her ability to work.  Based on this health history and a physical examination, Jackson was certified for employment without any limiting conditions.

At Methodist College, Jackson taught both lecture and clinical courses.  For lecture courses, Jackson had to develop a syllabus from a course description and course objectives, and she had to develop and deliver lectures.  For clinical courses, Jackson had to supervise students' involvement in real-world nursing experiences.  In addition to teaching, Jackson's professor position required her to engage in grant writing, expand scholarship through academic writing and presentations, and chair committees at the direction of Methodist College administrators.

On November 30, 2004, Dr. Shiphrah Williams-Evans, dean of Methodist College, issued a verbal warning to Jackson for unprofessional behavior, specifically because of Jackson's failing to inform William-Evans that she would be extending the Thanksgiving holiday and working from home, her deficient handling of a clinical course, her behavior during a grievance meeting, and student and faculty concerns regarding Jackson.  On January 11, 2005, Williams-Evans issued another verbal warning to Jackson for unprofessional behavior.  On February 14, Williams-Evans told Jackson that she would be removed from teaching a lecture course because of student complaints.  At that time, Jackson did not object to being removed from the course.  In fact, she was relieved and thanked Williams-Evans.  Although Jackson retained her title

of professor, she did not teach another lecture course throughout her employment at Methodist College.   On February 17, Williams-Evans issued a written warning to Jackson for being unprepared for class, being unorganized in her presentations, having an unclear syllabus and incomplete calendar, yelling at Williams-Evans, and delaying her Illinois nursing licensure.[1]   Jackson filed a grievance concerning this written warning, but the grievance was denied following a conclusion that Jackson's performance warranted discipline.

Jackson made several requests for what she alleges to be reasonable accommodations.  In January 2005, after the first verbal warning, Jackson requested that Williams-Evans assign her to her own office so that she would not have to share with another professor.  Jackson now contends that this request was to accommodate her Attention Deficit Disorder (ADD), but there is no evidence before the Court that the request was for that purpose or that Methodist College knew about the ADD at that time.  One office became available in February 2005, and Williams-Evans assigned this office by random draw to a different professor.  Williams-Evans assigned Jackson her own office in May 2005.   In a February 11, 2005, email memorandum, Jackson requested that she not be required to teach a new course every semester.  It appears that this request also was made before Methodist College became aware of her ADD.

On February 19, Jackson "self-reported" to a Work Life program social worker to discuss the issues raised in her written warning.  Jackson stated that she suffered anxiety and depressive symptoms due to job stress and previously was diagnosed with ADD.  Within days of this appointment she discussed reasonable accommodations with

---

[1] The Court notes that some of Jackson's behavior cited in the written warning was committed while teaching the lecture course from which she was removed prior to the written warning.

Williams-Evans and Kathy Jaegle, a human resources representative, and emailed Williams-Evans that she was working on a plan of care with the Work Life program social worker.  On March 1, the social worker provided Jackson a list of actions that she could work on to identify and overcome job performance barriers, and that list did not suggest any accommodations by Methodist College.

On March 10, Jackson emailed Jaegle the following list of suggested reasonable accommodations: (1) develop a checklist to handle organizational details before the syllabus and course calendar are finalized; (2) provide a conducive environment for professional development; (3) develop procedures and forms; (4) allow Jackson to teach one course repeatedly and provide additional time to prepare for a course; (5) allow co-teaching of courses; (6) provide additional time and support to allow Jackson to regain her confidence; (7) restrict criticism and negative evaluations to weekly or monthly meetings; (8) provide alternative methods of evaluations to balance student evaluations; and (9) provide clear measures of success apart from student evaluations. Methodist College responded that a checklist should be unnecessary because professors are expected to know how to prepare a course.  Methodist College also responded that procedures and forms were provided to Jackson or included in the faculty handbook; however, the handbook does not contain any forms.  Methodist College told Jackson that although she may co-teach, she would have to take a pay reduction because she would no longer be a full professor.  Jackson declined the offer to co-teach with a pay reduction.  Methodist College requested medical evidence of Jackson's disability, and Jackson agreed to work with Dr. Chandra Bilgi, an occupational medicine physician.

In April, Jackson had an initial meeting with Dr. Bilgi, who referred her to Dr. Jaya Attaluri for a neuropsychiatric evaluation.  In May, Jackson had two meetings with Dr. Attaluri.  Dr. Bilgi received Jackson's neuropsychiatric report in October.  Dr. Attaluri's report concluded that Jackson had the capacity to perform the job, but that she might be experiencing adjustment difficulties.  The report recommended that Jackson continue taking her medications and continue working with the Work Life program social worker.  The reported suggested the following reasonable accommodations: (1) advance notice of assignments, (2) a six-month adjustment period, and (3) private office space.  Later that month, Dr. Bilgi recommended that Jackson continue her medical care by her personal physician, that Methodist College provide advance notice of changes to her teaching subject or other new assignments, and that Methodist College provide Jackson with private office space.  Dr. Bilgi did not mention that Methodist College should allow Jackson to teach the same course twice in a row.

Methodist College hired Dr. Kimberly Johnston as Associate Dean and Vice Chancellor in July 2005, and she was Jackson's supervisor.  After Methodist College's termination of Williams-Evans in October 2005, Johnston became Interim Dean and then Dean (later re-titled President) of Methodist College.

On September 13, Johnston admonished Jackson for mentioning the race of students in connection with their clinical site experience assignments.  During September and October, Johnston received several complaints from third parties supporting the clinical classes.  One of these complaints reported a verbal altercation with a clinical course coordinator.  Johnston repeatedly instructed Jackson to work through clinical coordinators and to refrain from contacting clinical sites, but Johnston

continued to receive complaints about Jackson.  Johnston also told Jackson that she had to maintain personal boundaries and not strike or threaten others.  Johnston requested that Jackson meet with her weekly, but Jackson failed to comply with this request.  Johnston believed that Jackson's performance went downhill throughout the fall 2005 semester.

On September 23, Williams-Evans required Jackson to submit to a fit-for-duty examination.  Johnston believed that Jackson's erratic and explosive behavior, continued complaints from clinical sites, aggressive interactions with faculty members, and faculty complaints warranted this examination to determine if drugs or alcohol were involved with Jackson's behavior.  Johnston then placed Jackson on administrative leave pending the results of the examination.  The results of the drug and alcohol tests were negative.

On September 25, Jackson applied for leave under the Family and Medical Leave Act (FMLA) based on her personal physician's certification of depression and anxiety symptoms resulting from work stress.  Jackson later requested an extension of this leave to October 31, which Methodist College approved.  At the request of Jackson's physician, Methodist College accommodated a gradual return to work by relieving Jackson of teaching clinical rotations and by providing limited work assignments through the end of the semester.  Additionally, Johnston offered to meet with Jackson regularly after her return from the FMLA leave.

On December 7, Jackson sought approval to issue an "incident report" to a student concerning an incident that occurred in September.  Johnston told Jackson that she may not create and issue her own forms to students, but Jackson was permitted to

comment on whether students met clinical objectives in the clinical evaluation tool. Johnston talked to the course coordinator about Jackson's interaction with the student and learned that Jackson grabbed the student's arm. When confronted by Johnston, Jackson admitted to touching the student's shoulder.

On December 16, Johnston and Jackson met to discuss Johnston's conclusions about Jackson's performance. Johnston concluded that Jackson failed to observe boundaries between herself and others, failed to follow directions from her supervisors, failed to follow established protocol, failed to use her time productively, failed to observe office hours, failed to produce any scholarly works, attempted to use an unauthorized "incident report," failed to attend a faculty meeting and offered inconsistent excuses for her failure to attend, and failed to meet weekly with Johnston. Johnston also told Jackson that Jackson's scholarly production was low, especially considering her light teaching load. Johnston stated in the written memorandum that "if these behaviors continue or if the students you have in the spring semester begin again to complain, then those would be grounds for termination." (Def. Mot. Summ. J. at 30.)

During the 2006 spring semester, Jackson taught an online ethics course and the community rotation for a leadership and management course. She also was scheduled to teach an independent study, but no students enrolled.

On January 27, 2006, during a clinical session for the leadership and management course, a student became upset with other students and argued with two other students. After the class, Jackson talked briefly with one of the other students involved, but that student said she did not want to talk and left for her dormitory room. Jackson went to the student's dormitory room uninvited. Jackson was permitted to

enter the room, and she told the student to maintain confidentiality about what occurred during the class.  Subsequently, the student complained about Jackson's visit to her dormitory room.

On February 13, Johnston and human resources representatives met with Jackson to discuss the January 27 incident.  After that meeting, Johnston placed Jackson on an administrative leave of absence pending investigation.  Johnston concluded that Jackson violated her instruction to maintain boundaries by visiting the student's room uninvited.

Methodist College terminated Jackson on February 17, 2006.  Johnston, who ultimately decided to terminate Jackson, stated the reasons for termination were poor work performance and unprofessional behavior.

On March 14, 2006, Jackson filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that Methodist College discriminated against her on the basis of her ADD, an alleged disability, when it terminated her.  Jackson was diagnosed with ADD, anxiety, and depression prior to her employment at Methodist College.  Although it is unclear from the record before the Court, Methodist College probably was aware of Jackson's conditions sometime around February 2005.  The EEOC issued a Right to Sue letter on June 16, 2006.

Jackson timely filed this action pursuant to the ADA and the Rehab Act, alleging that Methodist College failed to accommodate her alleged disability, that it terminated her because of her ADD, and that it retaliated against her for requesting reasonable accommodations.  Methodist College moved for Summary Judgment contending that (1) Jackson is unable to establish a prima facie case of discrimination; (2) Methodist

College's reasons for terminating Jackson were not pretextual; (3) Jackson was not entitled to a reasonable accommodation; (4) Jackson is unable to establish a prima facie case for retaliation; (5) events occurring prior to May 18, 2005, are time barred; and (6) Jackson's falsified pre-employment health history and retirement limit an award of back pay.  This motion now is fully briefed, and this Order follows.

## STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party must demonstrate, through portions of the record or affidavits, the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  Any doubt about the existence of a genuine issue for trial is resolved against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then must present specific facts demonstrating a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986).  Rule 56(e) requires the non-moving party to go beyond the pleadings and make specific factual allegations demonstrating a genuine issue for trial.  *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548; *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989).  The non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial."  *Filipovic v. K&R Express*

*Sys., Inc.*, 176 F.3d 390, 395 (7th Cir. 1999); *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995).   Nevertheless, the Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]."  *Holland*, 883 F.2d at 1312.  The Court must deny summary judgment if a reasonable jury could return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

### I.  <u>Disability Discrimination Claim</u>

The ADA prohibits covered employers from discriminating against "a qualified individual with a disability because of the disability of such individual" with regard to hiring, advancement, and discharge.  42 U.S.C. § 12112(a).  Similarly, the Rehab Act prohibits a federal grant recipient, such as a college that receives federal grants, from discriminating against an "otherwise qualified individual with a disability" solely because of that disability.  29 U.S.C. § 794(a)-(b).  The Court uses the same standards under both the ADA and Rehab Act to determine whether an employer engaged in unlawful discrimination.

Like other disparate treatment employment discrimination claims, a plaintiff may prove discrimination using either the direct method or indirect, burden-shifting method of proof.  *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006).  Jackson does not argue that she may proceed under the direct method, and the Court finds no evidence in the record that would allow her to proceed under the direct method.  Therefore, the Court analyzes her claim under only the indirect method.  *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

To establish a prima facie case under the indirect method, the plaintiff must establish that (1) she is a qualified individual with a disability; (2) she was meeting the employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2005). If Jackson fails to establish any of these elements, her claim fails. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001). If she establishes all four elements, however, the burden shifts to Methodist to "articulate a legitimate, nondiscriminatory reason for the defendant's employment action." *Id.* If the employer meets this burden, then the plaintiff bears the burden of showing that the employer's proffered reason is pretextual. *Id.*

## A. Prima Facie Case

Methodist contends that Jackson fails to establish that she was a qualifies individual with a disability, but it does not argue that Jackson cannot establish the other 3 elements of a prima facie case, and therefore Methodist College waived those arguments for the purposes of this Motion.

To recover, Jackson must demonstrate that she was a qualified individual with a disability when Methodist terminated her. *Hoeller v. Eaton Corp.*, 149 F.3d 621, 624 (7th Cir. 1998). This showing requires Jackson to demonstrate (1) that she was qualified; and (2) that she had a disability. *Id.*

1. **"With a Disability"**

The ADA defines disability as any one of the following:

>   (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
>   (B) a record of such an impairment; or
>
>   (C) being regarded as having such impairment.

42 U.S.C. § 12102(2); *see also Anders v. Waste Mgmt. of Wisconsin, Inc.*, 463 F.3d 670, 677 (7th Cir. 2006); *Hoeller*, 149 F.3d at 624-25. "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

To establish disability under 42 U.S.C. § 12102(2)(A), Jackson must establish that (1) she suffered from a physical or mental impairment; (2) her alleged major life activity is a major life activity under the ADA; and (3) her impairment substantially limited that major life activity. *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, (7th Cir. 2001). Jackson suffered from ADD, post traumatic stress disorder (PTSD), anxiety, depression, and panic disorder, which are mental conditions constituting impairments under the ADA. *Krocka v. City of Chicago*, 203 F.3d 507, 512 (7th Cir. 2000). Jackson's alleged major life activity of working constitutes a major life activity under the ADA. 29 C.F.R. § 1630.2(i). Jackson alleges that her impairments limited her ability to interact with others and concentrate, which she concedes are components of the major life activity of working. *See Emerson v. N. States Power Co.*, 256 F.3d 506, 511 (7th Cir. 2001). "However, not all impairments are disabilities for purposes of the ADA." *Krocka*, 203 F.3d at 512; *see also* 29 C.F.R. pt. 1630 app. ("The determination of whether an

individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."); *Cassimy v. Bd. Of Educ. of the Rockford Pub. Sch., Dist. #205*, 461 F.3d 932, 936 (7th Cir. 2006) ("Not every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity.").   Jackson must demonstrate that her mental impairments substantially limited her major life activity of working.

"Substantially limited" means that the person is "[u]nable to perform a major life activity that the average person . . . can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person . . . can perform" that same activity.  29 C.F.R. § 1630.2(j)(1).  Jackson must be able to demonstrate that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."   29 C.F.R. § 1630.2(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation." *Id.*; *see also Cassimy*, 461 F.3d at 936.

Jackson's principal argument seems to be that she suffered from a variety of mental impairments, and that none of those mental impairments are specifically excluded by the ADA.   *See* 42 U.S.C. § 12114(a) (excluding employees engaged in illegal use of drugs); 42 U.S.C. § 12208 (excluding transvestism); 29 C.F.R. § 1630.3(d) (excluding transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders, sexual behavior disorders, compulsive gambling, kleptomania, and pyromania).  Although this argument standing alone would not be enough for Jackson to

meet her burden of production, the undisputed material facts suggest that there is a genuine question of fact as to whether Jackson was disabled.  Specifically, Jackson took a one-month leave of absence resulting from her mental conditions, received ongoing medical treatment to deal with anxiety and stress related to her job, and she stated that she had panic attacks in class and "hated walking into the classroom."  (Def. Mot. Summ. J. at 23.)  Although Jackson does not present facts demonstrating that Jackson's mental conditions substantially limited her ability to work in a broad range of jobs, the facts as presented allow a reasonable jury to infer that she was substantially limited.

Accordingly, the Court finds that Jackson presented facts from which a reasonable jury could conclude that she was disabled under the first prong of the ADA definition.  Therefore, the Court need not analyze whether Jackson had a record of a substantially-limiting impairment or was regarded as disabled by Methodist.

### 2.  "A Qualified Individual"

Jackson also must demonstrate that she was qualified for the position she held. To demonstrate that she is qualified for the position, Jackson must show (1) that she possessed the proper training, skills, and experience for the position; and (2) that she could perform the essential functions of the job, either with or without reasonable accommodation.  *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284 (7th Cir. 1996).

Jackson contends, and Methodist College does not challenge, that she satisfied all required skills, experience, education, and other job-related requirements of the position of professor.   However, Methodist College argues that Jackson could not

perform the essential functions of her professor position with or without reasonable accommodations.

In *Mays v. Principi*, 301 F.3d 866 (7th Cir. 2002), the Seventh Circuit held that there are situations in which no reasonable accommodation will allow an employee to perform a job. *Id.* at 871. In *Mays*, the plaintiff was a nurse with a ten-pound maximum lift restriction. *Id.* at 868. The Court found that no light duty nursing positions would accommodate the plaintiff because with patient contact, there is always the possibility that lifting or supporting the patients will be required. *Id.* at 871. Additionally, the Court held that the employer was not required to pair the nurse with another nurse or orderly because the ADA and the Rehab Act do not require the manufacture of new jobs to accommodate employees. *Id.*; *see also Dvorak v. Mostardi Platt Assoc.*, 289 F.3d 479, 484-85 (7th Cir. 2002) ("Under the ADA, an employer is not required to modify, reduce, or reallocate the essential functions of a job to accommodate an employee."); *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000) (holding that reasonable accommodation does not require the manufacture of new jobs).

Jackson admitted that she experienced panic attacks when teaching and hated entering the classroom. Methodist College offered that Jackson could co-teach her class with a reduction in pay, but Jackson declined the accommodation. She now seems to argue that the opportunity to co-teach courses without a reduction in pay would accommodate her disability. The Seventh Circuit repeatedly has rejected this as a reasonable accommodation because it would constitute the manufacture of a new job. Additionally, the Court is unconvinced that co-teaching would accommodate Jackson considering her admitted limitations regarding entering the classroom, which co-

- 15 -

teaching would not alleviate.    Neither Jackson nor her expert suggest any accommodation that would allow her to avoid panic attacks while teaching or her hatred of entering the classroom and still perform her essential job function of teaching. Further, Jackson conceded that none of the suggested accommodations would prevent the aggressive and inappropriate behavior for which Jackson ultimately was terminated. Like the situation in *Mays*, there is no reasonable accommodation that would allow Jackson to perform the professor job.

Because of her own admissions, Jackson presents no genuine issue of fact about whether she could perform the professor job with or without reasonable accommodation.    Accordingly, the Court finds that Jackson fails to establish that she was a qualified individual.    Therefore, Jackson fails to establish a prima facie case of employment discrimination.

### B. Legitimate, Non-Discriminatory Reasons for Termination

If Jackson could establish a prima facie case, the burden then would shift to Methodist College to show a legitimate, non-discriminatory reason for its decision to terminate Jackson.   *Dvorak*, 289 F.3d at 485; *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997).

Methodist College argues that it had legitimate non-discriminatory reasons for terminating Jackson's employment.    Methodist College received multiple student complaints about Jackson, and Methodist College removed her from a lecture course and clinical course because of those complaints.   Jackson failed to meet expectations for scholarship as required by her position description.    Jackson disregarded instructions to refrain from contacting clinical sites.   Jackson had aggressive interactions

with other faculty members and inappropriately touched a student's shoulder.   After being warned about her poor work performance and the need to maintain boundaries, Jackson visited a student's dormitory room.   Following this incident, Methodist College terminated Jackson for poor work performance and unprofessional behavior.

Considering Jackson's work performance history, the Court finds that Methodist College meets it burden of production that it had legitimate, non-discriminatory reasons for terminating Jackson.

### C. __Pretext__

Because Methodist College establishes legitimate, non-discriminatory reasons, the burden shifts back to the plaintiff to demonstrate that the defendant's reasons are pretextual.   *Dvorak*, 289 F.3d at 485; *Brill*, 119 F.3d at 1270.   Jackson must show that the proffered reason was "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995).   Jackson must produce "significantly probative admissible evidence from which the trier of fact could infer that the employer's reason was false."   *Jones v. Union Pacific R.R. Co.*, 302 F.3d 735, 742 (7th Cir. 2002) (*quoting King v. Preferred Technical Group*, 166 F.3d 887, 892-93 (7th Cir. 1999)).   Pretext is more than the defendant's error or exercise of poor business judgment; Jackson must establish that Methodist College did not believe the reasons it gave for terminating her.   *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000).

Jackson first argues that the main responsibility of a professor is teaching lecture courses, and that Jackson was not allowed to teach a lecture course after January 2005.   However, this argument does not establish pretext because the principal

teaching duties of a professor were lecture courses and clinical courses.  Jackson was not removed from teaching all courses, with the exception of her administrative leaves, until her termination.  Furthermore, Methodist College introduced evidence suggesting that Jackson expressed gratitude for not being assigned lecture courses.

Jackson also argues that she never received a performance review and that Johnston's conclusions about Jackson's work performance were not based on class observations.  The lack of a formal performance review does not create a genuine issue of material fact because there is evidence in the record that Jackson had a history of discipline related to poor work performance.  This history was sufficient to establish an honest belief by Methodist College that Jackson failed to meet expectations. Johnston based her conclusions on student complaints, discussions with other faculty members, and discussions with Jackson herself, which all form legitimate bases for her conclusion without direct classroom observation.  Additionally, Jackson suggests that she received many positive student reviews, but that evidence is not before the Court.  Jackson fails to establish that Johnston's conclusion about Jackson's performance were not true.

Jackson also argues that Methodist College's ground for termination due to unprofessional behavior was pretextual.  Jackson states that it was not unusual for professors to visit students' dormitory rooms.  There is a genuine issue of material fact about whether Jackson's contention is correct, but this issue does not change the outcome.  Jackson also states, but ultimately fails to provide any evidence, that similarly-situated employees were treated differently for aggressive behavior similar to that exhibited by Jackson.  There is no evidence in the record to allow the Court to consider this argument.  Finally, Jackson argues that Methodist College solicited

information about the incident where Jackson touched a student.  Jackson seems to suggest that her behavior was acceptable because the student did not complain about the incident.  However, behavior that violates an employer's policy is not acceptable regardless of whether a formal complaint is made.

This Court does not "sit as a super personnel department to review an employer's business decision."  *Ritter*, 231 F.3d at 1044; *Ranson v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 342 (7th Cir. 1999).  This Court is in no position to judge the prudence of Methodist College's actions.  On this record, the Court cannot make a determination that Methodist College did not honestly believe the reasons it stated for terminating Jackson. Jackson produces no evidence, other than self-serving statements that are insufficient to overcome an employer's negative assessment, that Methodist College's actions were pretextual.  *See Gustovich v. AT&T Commc'n*, 972 F.2d 845, 848 (7th Cir. 1992).

Because Jackson fails to establish a prima facie case of employment discrimination and fails to establish that Methodist College's legitimate, non-discriminatory reasons were pretextual, the Court grants summary judgment on Jackson's claim of employment discrimination.

## II.  Failure to Accommodate Claim

Methodist College contends that because Jackson cannot establish she was disabled under the ADA definition, her failure to accommodate claim cannot withstand summary judgment.  Methodist alternatively argues that even if Jackson was disabled, it made reasonable efforts to accommodate her.  Jackson counters that Methodist College must provide any accommodation that does not create an undue hardship on it.

To establish a claim of failure to accommodate, Jackson must show that: (1) she was disabled; (2) Methodist College was aware of her disability; and (3) she was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the job.  *McPhaul v. Bd. Of Comm'r of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000).

As discussed above, because Jackson fails to establish that she was "a qualified individual with a disability," Jackson's fails to establish a prima facie case for failure to accommodate.  Accordingly, Methodist College is entitled to summary judgment on this claim.

## III. Retaliation Claim

Methodist College contends that Jackson's retaliation claim fails because she is not disabled under the ADA definition.  It argues that there is no causal connection between a statutorily protected activity and an adverse employment action, as required under the direct method of proof.  Methodist College also argues that Jackson was not performing her job satisfactorily, as required under the indirect method of proof.

To establish retaliation under the direct method, Jackson would have to "(1) offer evidence that she engaged in a statutorily protected activity, (2) that the defendant subjected her to an adverse employment action and (3) that a causal connection exists between the two events."  *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008).  To establish retaliation under the indirect method, Jackson must show "(1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse

employment action." *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006).

Jackson contends that requesting a reasonable accommodation was a statutorily protected activity. As discussed above, because Jackson fails to establish that she was "a qualified individual with a disability," Jackson's request for an accommodation was not statutorily protected. Therefore, Jackson fails to establish a prima facie case under either the direct or indirect method. Accordingly, Methodist College is entitled to summary judgment on this claim.

## IV. <u>Other Limitations on Jackson's Potential Award</u>

Methodist College contends that any claims of discrimination for events occurring prior to May 18, 2005, are time-barred because they occurred more than 300 days before Jackson filed her charge of discrimination with the EEOC. Jackson concedes that those claims are time-barred, but she argues that the evidence may be used as background evidence to support a timely claim.

Methodist College also contends that Jackson's falsified pre-employment health history report and subsequent retirement limits any award of back pay.

Because Methodist College is entitled to summary judgment on all of Jackson's claims, the Court does not reach these arguments.

### CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment [#38] is GRANTED. This case now is terminated.

ENTERED this 23rd day of April, 2008.


/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge